**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **LEONARD E. DORSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:  2:05-CV-565-T** |
| | ) | |
| **GREG WHITE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW the Defendants Covington County Chairman Greg White, Sheriff Anthony Clark, Jail Administrator Jerry Edgar, and Assistant Jail Administrator Dorene Nelson, and submit their Special Report to the Court as follows:

## INTRODUCTION

The Plaintiff in this action, Leonard E. Dorsey, filed his Complaint on June 14, 2005. The Complaint alleges various violations of his First, Fifth, Eighth, and Fourteenth Amendment rights.   On June 17, 2005, this Court ordered the Defendants to submit a Special Report concerning the factual allegations made by the Plaintiff in his Complaint.

## PLAINTIFF'S ALLEGATIONS

It is extremely difficult to determine, from the Plaintiff's Complaint, exactly what his allegations and claims are.  However, as best defense counsel is able to determine, the Plaintiff alleges the following: (a) denial of medical treatment, specifically but not exclusively mental health treatment; (b) failure to address danger to his personal safety from other inmates and spiders; (c) oppressive living conditions due to overcrowding; (d) lack of recreation opportunity; (e) denial of adequate food and nutrition; and (f) lack of access to legal materials.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants Chairman Greg White, Sheriff Anthony Clark, Jail Administrator Jerry Edgar, and Assistant Jail Administrator Dorene Nelson, deny the allegations made against them by the Plaintiff as said allegations are untrue and completely without basis in law or fact.

## I.    FACTS

The Plaintiff was incarcerated in the Covington County Jail on April 26, 2005 for failure to appear.  (See Inmate File of Leonard Eugene Dorsey, (hereafter, "Inmate File"), attached hereto as Exhibit A and incorporated herein as if fully set forth.)  During his booking, the Plaintiff informed the booking officer that he suffered from mental/emotional upset.  Id.  He did not inform the jail staff that he was on any prescriptions and/or medications.  Id.  The Plaintiff had no medications on his person at the time of his booking.  Id.

On April 30, 2005, four days after the Plaintiff's incarceration at the Covington County Jail, the Plaintiff submitted an Inmate Sick Call Slip – Medical Request (hereafter, "Medical Request") complaining of stress headache and dizziness.  (See Medical File of Leonard Eugene Dorsey (hereafter, "Medical File"), attached hereto as Exhibit B and incorporated herein as if fully set forth.)  The jail medical staff acknowledged that a medical history and physical were due, and proceeded to arrange them.  Id.  On May 1, 2005, the Plaintiff was administered a tuberculosis skin test, which was read on May 3, 2005, and determined to be negative.  Id.  On May 2, 2005, the Plaintiff was examined by medical personnel and his medical history was taken.  Id.  At that time the Plaintiff did not indicate that he was on any current medications, including psychotropic medications.  Id.  He further indicated that he was not and had not been hospitalized for mental health reasons, had never attempted or considered attempting suicide, and was not considered a violent person.  Id.  The Plaintiff signed this medical history form.  Id.

On May 8, 2005, the Plaintiff submitted a Medical Request complaining of toothache, sinus problems, and drug withdrawal symptoms.  Id.  He was examined the next day (May 9, 2005), and prescribed Ibuprofen and Deonomine, to be administered both morning and evening, as well as put on a list to be examined by a dentist.  Id.  Though it appears that the Plaintiff took his evening medications, on at least five occasions during the month of May he refused his morning medications, and on one instance he did not present himself for sick call.  Id.

Also on May 9, 2005, the Plaintiff filed a request to use the telephone to contact his attorney, stating concern that his attorney would not receive collect calls.[1]  (Inmate File.)  On May 10, 2005, Dorene Nelson requested the name and telephone number of the Plaintiff's attorney, and stated that the jail staff would contact him and have him visit the Plaintiff.  Id.

On May 16, 2005, the Plaintiff filed a grievance complaining that he was "locked down" and had not heard from his attorney.  Id.  On May 17, 2005, Dorene Nelson explained to the Plaintiff that he was locked down because he had assaulted another inmate, and that she had contacted his attorney who had agreed to visit.  Id.  Also on May 17, 2005, the Plaintiff filed another request to call and meet with his attorney, as well as another grievance complaining of partiality towards particular inmates.  Id.  On that same date, Dorene Nelson again responded to the Plaintiff stating that she had contacted his attorney and that his attorney would be visiting him.  Id.  She further responded to the Plaintiff that she was not aware of a problem with partiality, and directed him to report his concerns to another jail official.  Id.  Finally, on the same date, the Plaintiff filed a request or grievance (the form does not indicate which), inquiring as to the status of an investigation into an assault for which the Plaintiff was locked down.  Id.

---

[1] All calls, whether local or long distance, made from telephones located in the inmates' Day Rooms are paid for by the receiving party, and thus all calls are made "collect."

Dorene Nelson responded by indicating that she was not involved with the investigation, and directed his inquiries to the appropriate investigating officer.  Id.

On May 26, 2005, the Plaintiff submitted a Medical Request, complaining of "drug addiction," "personal problems," and being "stressed."  (Medical File.)  This request does not appear to have been addressed.  Id.  However, on May 27, 2005, the Plaintiff again submitted a Medical Request complaining of stress and requesting a psychiatric evaluation.  Id.  In response to that request, the Plaintiff was seen by the jail nurse on May 30, 2005.  Id.  However, during that examination the Plaintiff became extremely belligerent and verbally abusive, and the examination was prematurely ended. Id.

On June 2, 2005, the Plaintiff filed a grievance complaining that he had requested a medical evaluation by a mental health professional, a visit by a chaplain, medication, or any or all of the foregoing.  (Inmate File.)  He alleged that he was denied all of these.  Id.  On June 3, 2005, Dorene Nelson responded that she had arranged for the jail chaplain to talk with the Plaintiff on the date of his request, that she had advised the jail nurse of his request for psychiatric evaluation, and suggested that he speak with the jail nurse regarding further treatment.  Id.

On June 4, 2005, the Plaintiff filed a Medical Request complaining of physical and mental stress and inability to sleep, and requesting a medical examination.  (Medical File.)  The Plaintiff was examined on June 6, 2005.  Id.  Also on June 4, 2005, the Plaintiff filed a grievance complaining that he had requested a tuberculosis test, a telephone call to his attorney, and $35.00 from his father.  (Inmate File.)  On June 6, 2005, Dorene Nelson responded to the Plaintiff, suggesting that he speak to the jail nurse regarding the tuberculosis test, and informing him that she had called his attorney and left a message for him to visit the Plaintiff.  Id.  On June 5, 2005,

the Plaintiff filed a "grievance"[2] acknowledging Nelson's reply to one of his medical requests, and further requesting to speak with her concerning money issues related to his store account. Id.  Finally, on June 5, 2005, the Plaintiff filed a request to see a notary public, which was addressed on June 7, 2005.  The Plaintiff's Complaint is dated June 7, 2005, though it was apparently not filed until June 14.  (See, generally, Complaint.)

At the time of the Plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure.  (Affidavit of Anthony Clark dated July 27, 2005 (hereafter, "Clark Aff."), attached herewith as Exhibit C and incorporated herein as if fully set forth, at ¶ 4; Affidavit of Jerry Edgar dated July 27, 2005 (hereafter, "Edgar Aff."), attached herewith as Exhibit D and incorporated herein as if fully set forth, at ¶ 4.)  Grievances were required to be in writing and could be filed with any member of the jail staff.  Id.  Copies of grievance forms are kept in the inmate's jail file.  Id.  Jail policy provided an exception that allowed emergency grievances to be made orally.  Id.  It was a violation of jail policy to deny an inmate access to the grievance procedure.  (Clark Aff. at ¶ 6; Edgar Aff. at ¶ 6.)  The Plaintiff was aware of the grievance procedure.  (Clark Aff. at ¶ 5; Edgar Aff. at ¶ 5.)

The Covington County Commission has contracted with Southern Health Partners, Inc. (hereafter, "SHP") to provide all health care related services for the inmates of the Covington County Jail.  (Clark Aff. at ¶ 11; Edgar Aff. at ¶ 11.)  Accordingly, the jail staff, including Sheriff Clark, Jerry Edgar and Dorene Nelson, have no authority or control over the provision of such services, and rely on the training and expertise of SHP for such services.  (Clark Aff. at ¶ 12; Edgar Aff. at ¶ 12.)  Moreover, SHP staff maintain, control, secure and dispense all medications.  (Clark Aff. at ¶ 11; Edgar Aff. at ¶ 12.)  Covington County Jail personnel do not have access to patient medications.  Id.  However, jail staff are instructed to contact the SHP

---

[2] The Plaintiff checked both the "grievance" and "personal problem" boxes on the request/grievance form.

nurse if an inmate is in obvious distress.  (Clark Aff. at ¶ 12; Edgar Aff. at ¶ 11.)  The jailers are required to follow any instructions given by the nurse.  Id.  If a jailer believes he is confronting an obvious emergency, he has full authority to summon an ambulance to take an inmate to Andalusia Regional Hospital.  Id.

Contrary to the Plaintiff's allegations, the Covington County Jail provides all constitutionally mandated necessities to its inmates, and includes several non-mandatory amenities.  The Covington County Sheriff's Department has a policy of providing adequate housing, food, and toilet facilities for its residents.  (Clark Aff. at ¶¶ 8-9; Edgar Aff. at ¶¶ 7-8.)  Each inmate receives three nutritious meals per day, and has continual access to water and toilet facilities.  Id.  It would be a violation of Sheriff's Department policy to restrict an inmates' access to water or toilet facilities, or to fail to provide an inmate with less than three nutritious meals per day.

The Covington County Jail facilitates its inmates' access to the courts by providing a law library.  (Clark Aff. at ¶ 16; Edgar Aff. at ¶ 16.)  This library contains case reporters, form books, jury instructions, and other materials.  Id.  All inmates have access to the materials in the library.  Inmates are either allowed access to the room where the materials are stored, or are allowed to check items out of the library if they are in segregation.  Id.

Additionally, each general population pod contains a pay telephone for the inmates' use.  The telephones require the inmates to place collect calls.  Unfortunately for the Plaintiff, his attorney will not accept collect calls from him.  This would appear to explain why he does not receive visitors as the jail has an inmate visitation policy.

With respect to exercise, all inmates are allowed a minimum of thirty-minutes of exercise per day.  (Clark Aff. at ¶ 17; Edgar Aff. at ¶ 17.)  There are limitations to the amount of outdoor

However, because the "grievance" box was checked, it is being included in this narrative of facts.

exercise that inmates receive that are beyond the control of the jail staff.  Weather, staffing, and security issues occasionally limit the availability of the exercise yard.  Id.  The Plaintiff has received access to the exercise yard.

Neither Defendant Sheriff Anthony Clark, nor Defendant Chairman Greg White, have personal involvement in the day-to-day operations of the Covington County Jail.  (Clark Aff. at ¶ 7; Affidavit of Greg White dated July 26, 2005 (hereafter, "White Aff."), attached herewith as Exhibit E and incorporated herein as if fully set forth, at ¶ 5.)  Sheriff Clark has delegated these responsibilities to the jail administrator.  (Clark Aff. at ¶ 7.)  None of the Defendants have personal knowledge of the facts of the Plaintiff's Complaint.  (Clark Aff. at ¶ 3; Edgar Aff. at ¶ 3; White Aff. at ¶ 4.)

## II.    LAW

### A.    The Plaintiff's Claims Against Chairman White Fail to State a Claim as a Matter of Law Because, as a County Commissioner, Chairman White Has No Authority or Responsibility For the Operations of the Covington County Jail.

Under well-established Alabama law, Chairman White cannot be held liable for any alleged conditions at the Covington County Jail, or failure to provide the Plaintiff with medical care.  The Plaintiff appears to have taken a shotgun pleading approach to the individuals named as defendants in the case at bar.  Chairman White is a victim of this approach.  It is difficult, if not impossible, to tell from the Complaint why the Plaintiff has sued Chairman White.  There is no allegation whatsoever that Chairman White had any personal involvement whatsoever in the events underlying the Complaint.

Strictly in his role as the Chairman of the Covington County Commission, Greg White has no responsibility whatsoever for the Covington County Jail or the Covington County Sheriff's Department.  The only conceivable avenue by which Chairman White could be liable to the Plaintiff is in his role as the Chairman of the Covington County Commission.  However, well-

settled law holds that Chairman White cannot be held liable under § 1983 on the basis of *respondeat superior* for the actions of sheriffs or jailers. Even if vicarious liability did attach, none of the other Defendants are Covington County employees.

1. **Chairman White cannot be held liable under § 1983 on the basis of *respondeat superior*.**

Because of the scarcity of references to Chairman White in the Complaint,[3] the only theory under which Plaintiff appears to allege Chairman White is liable is *respondeat superior*. However, neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added). The language of the statute requires a direct causal link between the plaintiff and the actions of a putative defendant. Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 25 years ago. Monell v. Department of Social Servs., 436 U.S. 658 (1978). In Monell, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691. Consequently, as Plaintiff's § 1983 claims are based upon nothing more than *respondeat superior*, the Complaint fails to state a claim for which relief may be granted against Chairman White. Id.

---

[3] Chairman White is mentioned *only* in the style of the case and in ¶ III. See generally Complaint.

### 2.    None of the other Defendants are Covington County employees.

Even if it were possible to proceed against Chairman White under § 1983 under *respondeat superior*, the Complaint does not contain allegations of any wrongdoing on the part of any Covington County employee.  Under well-settled Alabama law, sheriffs, deputy sheriffs, and sheriff's department jailers are not county employees.  Instead, they are state employees.  Furthermore, Alabama counties have no control over the policies and procedures of Alabama sheriffs in either law enforcement or jail operations.

The Alabama Constitution of 1901 does not delegate any power to the counties over sheriffs or their employees.  Instead, sheriffs are "executive department" officers of the *state* government.  Ala. Const., art. V, § 112.  Because a sheriff is a state officer, he cannot be directed or controlled by the county commission in any of his activities.  See Terry v. Cook, 866 F.2d 373, 379 (11th Cir. 1989) (noting that county commissions have no authority to hire or fire deputies, dispatchers and jailers).  Moreover, deputy sheriffs are extensions of the sheriff.  Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991).  Since the sheriff is not an employee of the county and deputies are extensions of the sheriff, deputies are not county employees.  Id.

### B.    The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for his Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' *before* suing over prison conditions.").  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  The Plaintiff in this case has not

utilized all administrative remedies available to him; he failed to file a claim with the State Board of Adjustments.

First, the Plaintiff failed to properly utilize the grievance procedure provided at the local level in the Covington County Jail to address his claims.  The Covington County Jail had a grievance procedure.  The Plaintiff never filed a grievance related to any of his claims related to the Defendants' failure to address danger to his personal safety from other inmates and spiders, overcrowding, the lack of recreation opportunity, the denial of adequate food and nutrition; or the lack of access to legal materials.  In fact, the only claim for which the Plaintiff may have filed a grievance is his claim for denial of medical care.

Second, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.  As state officials, both sheriffs and jailers enjoy sovereign immunity from suit under Article I, § 14 of the Alabama Constitution.  Turquitt, 137 F.3d at 1288-89.  Consequently, a claim for monetary damages against these Defendants is, in essence, a claim against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Because the State provides an administrative remedy that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

**C.    The Defendants, in Their Official Capacities, Are Entitled to Judgment in Their Favor as a Matter of Law.**

In his Complaint, the Plaintiff has not designated whether he is suing the Defendants in their official or individual capacities.  Out of an abundance of caution, to the extent the Plaintiff's Complaint can be construed as making official capacity claims, the Eleventh Amendment bars such claims.  Additionally, these Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.

**1.    All official capacity claims against Sheriff Clark, Jail Administrator Edgar, and Assistant Administrator Nelson are barred by the Eleventh Amendment to the United States Constitution.**

The Plaintiff's official capacity claims against Sheriff Clark, Jail Administrator Edgar, and Assistant Administrator Nelson are due to be dismissed for lack of subject matter jurisdiction.  Each Defendant, in his or her capacity as commissioner, sheriff, or jailer, is an executive officer of the State of Alabama.  Therefore, a suit against these Defendants, in their official capacities, is a suit against the State of Alabama.  See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66.  Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983.  See Free, 887 F.2d at 1557; see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity).  Thus, this Court lacks subject matter jurisdiction over these claims.

**2.    The Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983.  The United States

Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, any claims against Sheriff Clark, Jail Administrator Edgar, and/or Assistant Administrator Nelson, in their official capacities, are due to be dismissed because the Defendants are not "persons" under § 1983, and therefore, these claims fail to state a claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

**D.    The Defendants are Entitled to Qualified Immunity.**

In their individual capacities, all of the Defendants are entitled to qualified immunity and a dismissal of Plaintiff's claims unless they violated his clearly established constitutional rights of which a reasonable person would have known. Lancaster, 116 F.3d at 1424. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted). In the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in

the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The instant Plaintiff alleges that he was unlawfully denied mental health and medical care, that the Defendants failed to address danger to his personal safety from other inmates and spiders, that the Defendants promoted oppressive living conditions due to overcrowding, that the Defendants denied the Plaintiff recreation opportunity, that the Defendants denied him adequate food and nutrition, and that the Defendants denied him access to legal materials.  The Defendants are entitled to judgment in their favor as a matter of law on these claims for three reasons.  First, these Defendants' policies and actions were not deliberately indifferent to a constitutional right of the Plaintiff.  Second, the Defendants did not promulgate policies that caused the Plaintiff's

alleged constitutional deprivations.  Third, no clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.

## 1.    The Plaintiff did not suffer from an objectively serious medical need.

A constitutional violation under the Eighth Amendment for denial of medical care is stated where the facts tend to show that a jail official was deliberately indifferent to the serious medical needs of an inmate.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Plaintiff must satisfy both an objective and a subjective inquiry.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).  First, he must show an objectively serious medical need.  Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543.  Second, the Plaintiff must demonstrate that the Defendants acted, or failed to act, with an attitude of "deliberate indifference" to that serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A prison official cannot be deliberately indifferent to an excessive risk to an inmate's health unless he is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draws[s] the inference."  Farmer, 511 U.S. at 837.

In the instant case, the Plaintiff has failed to allege any facts tending to show that these Defendants knew of a serious medical condition.  In fact, other than alleging that he is "suffering emotionally" and "breaking down," he has failed to allege that he even has a serious medical condition.

While the Plaintiff's mental condition ***could*** become a serious medical need, it was not at the time of his incarceration.  During his confinement, the Plaintiff was repeatedly examined by a medical personnel.  (See, Medical File.)  In fact, the records indicate that the Plaintiff was examined by medical personnel at least four times within the space of less than six weeks.  Id. Apparently, the Plaintiff disagrees with the amount and/or level of care he received from his medical providers.

14

An inmate does not have a right to a *specific* kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").  The Plaintiff was repeatedly examined by mental health professionals, none of whom instructed the jail staff to care for the Plaintiff in any manner inconsistent with the manner in which he was treated.  Further, he has no alleged any facts to show that he has been a danger either to himself or to others.  Consequently, he cannot show an objectively serious medical need for purposes of this lawsuit.

##### 2.    The Complaint fails to allege a constitutional violation in that Defendants were not deliberately indifferent to the Plaintiff's serious medical needs.

The Constitution does not mandate comfortable prisons.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Jail officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Hudson v. Palmer, 468 U.S. 517, 526-527 (1984).  A claim is stated only where the conditions of confinement pose a risk to

the health or safety of an inmate and the defendant official is deliberately indifferent to that risk. <u>Farmer</u>, 511 U.S. at 837.

These Defendants were not deliberately indifferent to any objectively serious need that could be construed in the Plaintiff's Complaint. In order to be deliberately indifferent, an official must both know of a serious risk of harm and disregard it. <u>Farmer</u>, 511 U.S. at 837. The Complaint does not allege, and the facts do not support, that these Defendants were deliberately indifferent.

Anthony Clark, Jerry Edgar and Dorene Nelson have no direct involvement whatsoever in the provision of medical care to the Plaintiff or other inmates at the Covington County Jail. (Clark Aff. at ¶¶ 11-13; Edgar Aff. at ¶¶ 10-12.) In fact, the Plaintiff's Complaint does not allege that these Defendants had anything whatsoever to do with his medical care. (<u>See, generally</u>, Complaint.) SHP was responsible for the provision of medical care, including mental health care, to the inmates. (Clark Aff. at ¶¶ 11-13; Edgar Aff. at ¶¶ 10-12.) The Covington County Jail staff has no control or authority over the medical practices, policies or procedures of SHP. (Clark Aff. at ¶ 11; Edgar Aff. at ¶ 10.) Further, the evidence before the Court, demonstrates that Plaintiff received a considerable amount of mental health care in the two months he has been in jail. (Medical File.) The Plaintiff's Medical File indicates that the county mental health facility evaluated the Plaintiff on *at least four different occasions within six weeks*. <u>Id.</u>

The Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. This Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has

received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[4] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

---

[4] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Assuming, *arguendo*, that the SHP staff or the county mental health facility employees did not properly respond to the Plaintiff's complaints, these Defendants have not been deliberately indifferent. Sheriff Clark, Jerry Edgar and Dorene Nelson are **required** to rely upon their medical staff. They cannot supplant their untrained opinion for that of medical professionals.

Finally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. There is no allegation whatsoever in the Complaint that the Defendants participated in, or interfered with, the treatment decisions made with regard to the Plaintiff. It is therefore clear from the face of the Complaint that the Plaintiff's chief claim is that the contract medical personnel ineffectively treated him. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. Regardless, the Defendants cannot be held responsible for the alleged malpractice of a county contractor.

The Plaintiff has failed to allege, and the facts do not support, that Sheriff Clark violated the Plaintiff's federally protected rights. The instant Plaintiff alleges that he was subjected to forced religion, denial of sufficient food, overcrowding in the jail, denial of adequate exercise and exercise facilities, unreasonable phone charges and monitoring, and denial of access to legal materials. As stated before, Sheriff Clark is not specifically accused of doing anything wrong;[5] therefore it is unclear why he has been sued. Accordingly, the Plaintiff cannot meet either of his burdens under the qualified immunity analysis – he cannot show a constitutional violation or clearly established law that placed Sheriff Clark on notice that his conduct was unlawful.

---

[5] Though named as a Defendant, Sheriff Clark does not appear anywhere in the Plaintiff's Statement of Facts.

3.      **These Defendants did not violate any of the Plaintiff's federally protected rights.**

The Plaintiff cannot meet his first burden under the qualified immunity standard – he cannot show a violation of his federal rights.  The Defendants therefore entitled to qualified immunity for three reasons.  First, none of the Defendants can be held liable on a theory of *respondeat superior*.  Second, there are no allegations of any wrongdoing on the part of the Defendants.  Third, there is no causal connection between the policies promulgated by the Defendants and the Plaintiff's alleged injuries.

(a)      ***Respondeat Superior* cannot serve as a basis for § 1983 liability.**

To the extent the Plaintiff seeks to impose vicarious liability on the Defendants, his claims are due to be dismissed.  As noted previously, vicarious liability is not permitted under § 1983.  See Monell, 436 U.S. at 691.

(b)      **There is no allegation of any personal wrongdoing on the part of these Defendants.**

There is no constitutional mandate that prisons or jails be made comfortable.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Price v. Johnston, 334 U.S. 266, 285 (1948).  "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."  Bell v. Wolfish, 441 U.S. 520, 546 (1979).

To overcome the Defendants' entitlement to qualified immunity, the Plaintiff must prove that they were deliberately indifferent.  Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Specifically, the Plaintiff must prove that the Defendants were aware that a substantial risk of serious harm to the inmate's health or safety existed.  The Plaintiff must further prove that the Defendants drew the

19

inference of the existence of such a risk.  Id.  As previously noted, the Plaintiff's statement of the facts is devoid of any reference to any of these Defendants.  Additionally, Sheriff Clark and Chairman White have little or nothing to do with the day-to-day operations of the Covington County Jail.

Turning first to the Plaintiff's overcrowding claims, Defendants must concede that the Covington County Jail is overcrowded.  However, said overcrowding is caused by the failure of the State of Alabama to retrieve those inmates which are lawfully due to be transferred into its custody.  (Clark Aff. at ¶ 10; Edgar Aff. at ¶ 9.)  Further, the overcrowding does not present a health or safety hazard, as all inmates are provided adequate sleeping facilities and continual access to water and toilet facilities.  Id.  It is significant that just six weeks prior to the date Plaintiff filed his Complaint, the State of Alabama Department of Corrections inspected the Covington County Jail and found that, while the Jail is "overcrowded at this time," said overcrowding did not affect the Jail's security, sanitation or personal hygiene.  (Jail Inspection Report of the State of Alabama Department of Corrections dated April 20, 2005 (hereafter, "Inspection Report"), attached herewith as Exhibit G and incorporated herein as if fully set forth.)

The United State Supreme Court has determined that "double-celling" – the practice of housing two inmates to a cell as a result of overcrowding – was not unconstitutional as long as it didn't result in "deprivations of essential food, medical care, or sanitation," increase violence among inmates, or "create other conditions intolerable for prison confinement."  Rhodes v. Chapman, 452 U.S. 337, 348 (1981).  Though the Plaintiff has alleged insufficient food, which allegations are addressed below, he has not alleged that such insufficiency is related to the overcrowding of the jail.  The Alabama Department of Corrections, as recently as two weeks ago, found no deprivations or intolerable conditions.  (Inspection Report.)  See also, Bell v.

Wolfish, 441 U.S. 520, 543 (1979) (finding that, while "double-bunking" may have taxed particular equipment or facilities in the jail, it did not fail to meet Constitutional standards); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the fact that an inmate "had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation").

The Constitution requires that inmates are provided "a well-balance meal, containing sufficient nutritional value to preserve health." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977). See also, Hamm, 774 F.2d at 1575. Each inmate at the Covington County Jail receives three nutritious meals per day, and inmates are commonly known to gain weight while incarcerated at the Jail. (Clark Aff. at ¶ 8; Edgar Aff. at ¶ 7; Covington County Jail Menu for May, 2005, attached herewith as Exhibit F and incorporated herein as if fully set forth.) In fact, the Alabama Department of Corrections found that the quantity of food prepared was "good."[6] (Inspection Report.)

Regarding the Plaintiff's claims of inadequate exercise, it is the policy of the Jail to allow every inmate at least thirty minutes per day to exercise in an outdoor exercise yard, weather permitting. (Clark Aff. at ¶ 17; Edgar Aff. at ¶ 17.) The Alabama Department of Corrections found that the Jail had an adequate recreation facility and program. (Inspection Report.) Though an outdoor exercise yard is provided, it is not Constitutionally required. The Eleventh Circuit has held that provision of indoor space for exercises such as push-ups, sit-ups, or jogging in place meets Constitutional muster. Wilson v. Blankenship, 163 F.3d 1284, 1293 (11th Cir. 1998).

---

[6] The possible scores on the Inspection Report are "poor," "fair" and "good." Therefore, a score of "good" is the highest mark a jail can receive.

Contrary to his claims, the Plaintiff has not been denied access to legal materials. The due process clause of the Fourteenth Amendment to the United States Constitution assures inmates a right of meaningful access to the courts. <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 821-22 (1977). However, this right requires only that an inmate be provided with some reasonable manner with which he may bring his legal claims. <u>Id.</u> at 830. A law library is one of many ways to provide inmates with access to the courts. <u>Id.</u> at 830-31; <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445 (11th Cir. 1998) (citing <u>Bounds</u> and holding that the United States Supreme Court did ***not*** create a "freestanding right to a law library" for inmates). Providing inmates with attorneys or other trained legal personnel also satisfy the Fourteenth Amendment. <u>Bounds</u>, 430 U.S. at 830-31. Regardless, in order to prevail on a denial of access to the courts claim an inmate must establish prejudice by "demonstrating that the alleged shortcoming in the library . . . hindered his efforts to pursue a legal claim." <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).

In his claim regarding denial of access to legal materials, Plaintiff has actually brought a claim of denial of access to the courts, which claim must fail. First, the Plaintiff has failed to even allege an injury. Nowhere in the Plaintiff's Complaint does he aver that the alleged denial of materials hindered him in pursuing a legal claim. (<u>See</u> <u>generally</u> Complaint.) The Plaintiff obviously was not hindered in bringing the instant lawsuit as it is now pending before this Court. If the Court will review its records, it will find that over 20 inmate lawsuits have been filed by inmates at the Covington County Jail in the last eighteen months. The inmates filing these lawsuits have not been hampered in pursing their claims. As the Plaintiff has not alleged that any deficiency in the Covington County Jail law library caused him harm, he has failed to allege a constitutional violation. <u>Lewis</u>, 518 U.S. at 351.

Furthermore, the Constitution does not mandate that jails have law libraries.  <u>Bass</u>, 143 F.3d at 1445.  The United States Supreme Court has very clearly held that having a law library is only one of many ways to provide access to the courts.  <u>See</u> <u>Bounds</u>, 430 U.S. at 830-31.

Finally, the Plaintiff does indeed have access to legal materials.  The Covington County Jail provides a law library for inmate use.  (Clark Aff. at ¶ 16; Edgar Aff. at ¶ 16.)  Inmates are free to request that a book from the library be brought to them, or alternatively, they may submit a written request that they be taken to the library.  <u>Id.</u>  Plaintiff has failed to avail himself of either of those procedures.  <u>Id.</u>  Any request of this nature would have been included in the Plaintiff's inmate file, a complete copy of which has previously been provided to this Court.

Inasmuch as the Plaintiff has failed to allege any specific threat or physical danger to his person, other than Brown Recluse spiders, it is difficult to understand how these Defendants could have been aware of any such threat and then acted to prevent it.  Threats to inmates are taken seriously, and the physical well being of all inmates and staff of the jail is the utmost priority of the Covington County Sheriff's Office.  (Clark Aff. at ¶ 14; Edgar Aff. at ¶ 13.)  However, the Plaintiff reported no potential threat to these Defendants – not even the presence of a spider.  (Clark Aff. at ¶ 15; Edgar Aff. at ¶ 14.)  Further, neither Jerry Edgar nor Dorene Nelson are aware of any Brown Recluse spider sightings in the jail.  (Edgar Aff. at ¶15.)  Therefore, these defendants have not been indifferent to the Plaintiff's situation.

Based upon the foregoing the Plaintiff has failed to allege a violation of his federally protected rights – let alone a violation personally committed by these Defendants.  Therefore, these Defendants are entitled to qualified immunity and judgment as a matter of law on the Plaintiff's claims.

> **(c)** **There is no causal connection between any policy or custom promulgated by Defendant Sheriff Anthony Clark and the Plaintiff's alleged injuries.**

The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  The Eleventh Circuit, therefore, applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement.  Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990); see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).   The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights."  Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added).  The Complaint fails to allege facts supporting any of these elements, and there is no evidence to support the allegations even if they were made.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).

First, this Defendant's policies and actions were not deliberately indifferent. As noted above, there is no allegation or evidence of personal involvement on the part of these Defendants. (See generally Complaint). Furthermore, there is no allegation that these Defendants had knowledge (either actual or constructive) of a training deficiency in the Covington County Jail or that the policies and/or customs of the jail would result in constitutional violations. Id. There is no allegation of widespread obvious, flagrant, rampant and continuous abuse by corrections officers. Id.

Second, there are no facts in the record from which a reasonable person could conclude that the conduct of these Defendants was deliberately indifferent. For example, there are no specific allegations that the food at the jail – either in quantity or quality – has harmed the Plaintiff, or any other inmate, or that jail overcrowding has presented a health or safety risk. The jail has a law library and a policy granting inmates the right to use it. The jail has an exercise policy that allows thirty-minutes of exercise per day.

Prison officials may be held liable for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). There are no allegations in the Amended Complaint at all to show that the Defendants were aware of any risk of harm to the Plaintiff – let alone a substantial risk of harm. Consequently, the Plaintiff has failed to meet the second element of supervisory liability under § 1983.

Regarding the third element of supervisory liability, there is no causal connection between this Defendant's conduct and the alleged constitutional deprivation. Again, these

Defendants were not present during any of the events described in the Plaintiff's Complaint. There is no evidence that Sheriff Clark, Jerry Edgar or Dorene Nelson failed to train the jail personnel.

The Plaintiff has failed to allege, and the facts do not show, the existence of the elements of supervisory liability under § 1983.  See Greason, 891 F.2d at 836-37.  Sheriff Clark cannot be held vicariously liable under § 1983.  Monell, 436 U.S. at 694-95.  Consequently, Sheriff Anthony Clark is entitled to qualified immunity and judgment in his favor as a matter of law. Saucier, 533 U.S. at 201.

> **E.    No clearly established law gave these Defendants fair warning that their conduct was unlawful.**

The Plaintiff must show that clearly established law provided the Defendants with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the Defendants' conduct was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

As the Plaintiff has made no direct allegations with respect to the conduct of these Defendants, there is nothing from which the Court may judge whether the Defendants have acted

lawfully or unlawfully. Consequently, the Plaintiff has failed to meet the second burden placed upon him by the qualified immunity standard.

It should be noted, however, that with respect to the policies these Defendants have put in place at the Covington County Jail, each one is constitutional. For example, the Plaintiff's exercise claim also fails under the decisions of federal courts. See, e.g., French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (holding lack of exercise states a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"); Bensinger v. Boyle, 1995 WL 422795, *2 (E.D. Pa. 1995) (holding deprivation of exercise for five straight days not constitutional violation). The Plaintiff's other claims are likewise deficient for the reasons stated above.

### III.    MOTION FOR SUMMARY JUDGMENT

#### A.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d at 831. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure §

2529, p. 299.[7] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### B.    Motion for Summary Judgment

The Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

Respectfully submitted this 27th day of July, 2005.

**s/Scott W. Gosnell**
SCOTT W. GOSNELL, Bar Number:  GOS002
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Road
Montgomery, Alabama  36117
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  sgosnell@webbeley.com

---

[7] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 27th day of July, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following Non-CM/ECF participant by United States Mail, postage prepaid:

Leonard E. Dorsey
Covington County Jail
290 Hillcrest Drive
Andalusia, Alabama  36420


**s/Scott W. Gosnell**
OF COUNSEL